IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LINDA SKEET, Individually and as**
**Personal Representative of Redmond**
**Etsitty,**
    **Plaintiff,**

vs.                 No. CIV 10-0107 RB/WDS

**UNITED STATES OF AMERICA,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**

   **THIS MATTER** is before the Court on Defendant's (United States's) Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the Alternative, Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(b), (Doc. 52), filed on October 31, 2011. Plaintiff (Ms. Skeet) filed a response in opposition to this motion on November 21, 2011, (Doc. 58), and a notice of errata on December 1, 2011, (Doc. 60). The United States filed a reply brief on December 12, 2011, (Doc. 67). Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions of counsel, the record, and the relevant law, the Court grants the motion as to Count II, and otherwise denies the motion.

**I.**  **Background**

   On June 5, 2008, eleven-year-old Redmond Etsitty was playing with his cousins, Dominic and Diamond Skeet, at the base of a steep cut in a hillside near Redmond's home outside Vanderwagen, New Mexico. As the children were digging in the dirt, the hillside collapsed on Redmond and he died of asphyxiation. The steep cut had been excavated during construction of a waterline installed in 2006-2007 by the Indian Health Service (IHS), an agency within the United States Department of Health and Human Services (DHHS), the Navajo

Engineering and Construction Authority (NECA), and the Navajo Tribal Utility Authority (NTUA).  The IHS had contracted with NECA and NTUA to install the waterline, under the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450f.  Pursuant to the contract between the IHS and NECA, the IHS provided, *inter alia*, engineering design services, special construction materials, and construction supervision. (Def. Ex. A).

Ms. Skeet, the mother and personal representative of Redmond, brought this action for the wrongful death of Redmond under the Federal Tort Claims Act (FTCA).  *See* 28 U.S.C. §§ 1346(b), 2671, & 2674.  Ms. Skeet claims that the hillside collapsed because the steep cut was left in the hillside at the conclusion of the waterline project.  According to Ms. Skeet, the IHS negligently approved the plans for the waterline project that allowed the dangerous condition to arise, and approved the actions of NECA and NTUA, which negligently failed to properly grade or slope the hillside.

On April 17, 2009, Ms. Skeet submitted an administrative claim to the IHS for the wrongful death of Redmond Etsitty.  (Def. Ex. A, Doc. 53-1).  On February 8, 2010, Ms. Skeet, Individually and as Personal Representative of Redmond Etsitty, initiated this lawsuit by filing a Complaint for Wrongful Death.  (Doc. 1).  On April 23, 2010, Ms. Skeet filed a First Amended Complaint for Wrongful Death.  (Doc. 8).  Therein, Ms. Skeet alleges two counts: (1) the IHS took affirmative action to approve its contractor leaving a steep cut in the hillside upon completion of the project; or, in the alternative, the IHS affirmatively approved plans which violated applicable standards with respect to the grade or slope of the hillside, and, (2) IHS contracted with NECA and NTUA to install the waterline system, the contractors negligently failed to properly grade or slope the hillside, and the IHS is responsible for the negligence of its contractors.  (*Id*.)

The United States moves to dismiss for failure to state a claim and for summary judgment based on the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a).

**II.     Discussion.**

**A.     Ms. Skeet has stated claims upon which relief may be granted in Count I.**

The United States contends that Ms. Skeet has failed to state a claim under Fed. R. Civ. P. 12(b)(6) because she has not alleged that employees of the United States violated any standard.  Additionally, the United States asserts that the Court lacks jurisdiction to hear Ms. Skeet's claim "because she has not established that some undefined 'violation of applicable standards' gives rise to a claim under New Mexico law."  (Doc. 52 at 7).

The Supreme Court has stated that "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level," and there must be "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.  To state a claim, a plaintiff must "nudge" her claims "across the line from conceivable to plausible" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950-51 (2009).  In applying this standard, a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*citing Twombly*, 550 U.S. at 556)).

Notably, "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."  *Robbins*, 519 F.3d at 1248.  "A simple negligence action . . . may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a

3

specified date and time." *Id*. Ms. Skeet alleges simple negligence claims.

The substantive law of New Mexico applies to Ms. Skeet's claims. *See* 28 U.S.C. § 2674; *Richards v. United States*, 369 U.S. 1, 11 (1962) (substantive law of the place of the act or omission applies to FTCA claims). The New Mexico Supreme Court has stated: "Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Herrera v. Quality Pontiac*, 134 N.M. 43, 47-48, 73 P.3d 181, 185-86 (2003). The duty may be based on common law, statutory law, or general negligence standards. *See Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 142 N.M. 583, 168 P.3d 155 (Ct. App. 2007). Thus, New Mexico law does not require a plaintiff to identify a specific standard to state a negligence claim; rather, New Mexico law requires a plaintiff to allege the existence of a duty based on a standard of reasonable care to state a negligence claim. A fair reading of Count I of the First Amended Complaint reveals that it includes such an allegation.

New Mexico law recognizes a cause of action for injuries resulting from the defective or unsafe condition of a physical improvement to real property. *See City of Albuquerque v. BPLW Architects & Eng'rs, Inc.,* 146 N.M. 717, 213 P.3d 1146 (Ct. App., 2009); *see also* N.M. Stat Ann. § 37-1-27 (imposing ten-year statute of limitations for such actions); *Coleman v. United Eng'rs & Constructors*, Inc.,118 N.M. 47, 51, 878 P.2d 996, 1000 (holding § 37-1-27 did not eliminate duty to exercise reasonable care in design, construction, planning, or inspection of improvement but, rather, it merely foreclosed suit for redress after ten years had passed since substantial completion of improvement). Ms. Skeet has alleged that Redmond died from injuries caused by the unsafe condition of the hillside left by the waterline project. Additionally, in

Count I, Ms. Skeet has alleged that the IHS (1) negligently approved the plans for the waterline project that allowed the dangerous condition to arise; and, (2) negligently approved the actions of NECA and NTUA, thereby leaving the hillside in an unsafe condition.  Notably, Ms. Skeet's claims in Count I do not arise from the construction contract between the IHS, NECA, and NTUA; rather, her claims in Count I arise from the IHS's alleged negligence in approving the plans and alleged negligence in approving the final project.  In that Ms. Skeet has alleged direct negligence claims against the IHS in Count I, the United States's arguments concerning privity of contract are inapplicable.

In Count I, Ms. Skeet has alleged background facts and specific facts relating to the alleged negligence of the IHS resulting in the wrongful death of her son.  These allegations, if proven, are sufficient to state plausible claims for negligence.  With regard to Count I, Ms. Skeet has stated claims upon which relief may be granted, in satisfaction of the *Twombly* standard.

In Count II of the First Amended Complaint, Ms. Skeet has alleged that IHS contracted with NECA and NTUA to install the waterline system, the contractors negligently failed to properly grade or slope the hillside, and the IHS is responsible for the negligence of its contractors. (Doc. 8).  The United States may not be held vicariously liable for negligent acts or omissions committed by employees of government contractors whose daily operations are not closely supervised by United States officials.  *See United States v. Orleans*, 425 U.S. 807, 815; *Curry v. United States*, 97 F.3d 412, 414 (10th Cir. 1996) (stating the FTCA does not authorize suits based on the acts of independent contractors or their employees).  Ms. Skeet has not alleged that the IHS closely supervised the contractors and no provision in the contract provides that the IHS was required to protect the interests of third-parties, such as Redmond Etsitty.  Thus, Count II fails to state a claim upon which relief may be granted.

**B.      The discretionary function exception is inapplicable.**

The United States asserts that the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), applies, and therefore, the Court does not have jurisdiction over the claims made by Ms. Skeet. Ms. Skeet responds that the exception is inapplicable.

In that factual matters outside the pleadings and jurisdictional issues are considered, the Court finds it appropriate to apply the summary judgment standard to the analysis. *See Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The evidence, and all reasonable inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1175 (10th Cir. 2008).

The United States, as a sovereign, is immune from suit unless it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The FTCA provides a broad waiver of sovereign immunity for:

> claims . . . for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674.

This waiver is limited by the discretionary function exception, which provides that the United States is not liable for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the United States, whether or not the discretion involved be abused." 28 U.S.C. §

2680(a).

The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984).  The discretionary function exception protects those acts which involve an element of judgment or choice, *United States v. Gaubert*, 499 U.S. 315, 321 (1991), but it only protects "governmental actions and decisions based on considerations of public policy." *Berkovitz*, 486 U.S. 531, 537; *Gaubert*, 499 U.S. at 324 ("The focus of the inquiry is . . . on the nature of the actions taken and on whether they are susceptible to policy analysis.").  In other words, only those judgments "grounded in the social, economic, or political goals of the statute and regulations are protected." *Gaubert*, 499 U.S. at 323.

The Supreme Court has devised a two-part test to determine the applicability of the discretionary function exception. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  The first step of the *Berkovitz* test inquires whether a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. *Id*. at 536.  In that conduct cannot be discretionary unless it involves an element of judgment or choice, the exception is inapplicable when a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow. *Id.*  However, if the challenged conduct does involve an element of judgment or choice, the court must proceed to the second step and determine whether that judgment "is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536; *Duke v. Dep't of Agric.*, 131 F.3d 1407, 1410 (10th Cir. 1997).

For the first step of the Berkovitz test, Ms. Skeet relies on the Criteria for the Sanitation

Facilities Construction Program, which is a compilation of guidance policies. General guidelines do not mandate a specific course of conduct. *Zumwalt v. United States*, 928 F.2d 951, 954 (10th Cir. 1991). Morever, the section entitled Construction Site Safety for the Community is inapplicable because the incident occurred after construction was complete. The IHS/NECA Specifications, the Storm Water Pollution Prevention Plan, the MOA Guidelines, and the NTUA Standards & Construction technical requirements contain neither mandatory requirements that the embankment be sloped to a specific grade nor a mandatory directive concerning the right-of-way or the embankment. In that no federal statute, regulation, or policy specifically prescribed a course of action for the IHS employees to follow under the particular circumstances of this case, the analysis proceeds to the second step of the *Berkovitz* test.

The second step of the *Berkovitz* test inquires whether the exercise of the judgment or choice at issue "is the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. The goal of this inquiry is to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id*. at 536-37 (quoting *Varig Airlines*, 467 U.S. at 814). To prevail on the second step of *Berkovitz*, Ms. Skeet "must allege facts [that] would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert,* 499 U.S. at 324-25.

The Tenth Circuit recognized the inherent problems involved in application of the second prong of *Berkovitz* by stating:

> [N]early every governmental action is, to some extent, subject to policy analysis-to some argument that it was influenced by economics or the like. An added difficulty is that a failure to act can be a policy decision; and a failure to think about acting may still be susceptible to policy analysis.

*Duke*, 131 F.3d at 1410 (quotation and omitted).

> The Tenth Circuit cogently observed:
>
> This permits the government to argue, as it appears to do here, that decisions-or non decisions-that involve choice and any hint of policy concerns are discretionary and within the exception. We agree . . . that this approach . . . would not only eviscerate the second step of the analysis set out in *Berkovitz* and *Gaubert*, but it would allow the exception to swallow the FTCA's sweeping waiver of sovereign immunity . . . . We must ask if the decision or non-decision implicates the exercise of a policy judgment of a social, economic or political nature.

*Duke*, 131 F.3d at 1411 (internal quotations and citations omitted).

*Duke* illustrates the approach required for application of the second step of *Berkovitz*. The plaintiffs in *Duke* were camping near the Quemado Lake Dam in the Gila National Forest. The plaintiffs were not in a developed campsite, but were across the road from a developed campsite. The construction of a state road had created a risk of boulders rolling down a hill. The plaintiffs' child suffered a brain injury when a boulder rolled down a hillside and smashed into their tent. The Forest Service admitted that although there were no signs designating the spot for camping, camping had always been allowed there, as reflected in the fact that there was an existing fire ring. *Duke*, 131 F.3d at 1409-10.

In reversing the district court's determination that it lacked subject matter jurisdiction under the discretionary function exception, the Tenth Circuit held that the Forest Service's failure to provide any warning of this risk was not protected by the discretionary function exception because, in contrast to other cases, this situation involved a specific, known risk, and there were no public policy considerations at issue. *Duke*, 131 F.3d at 1411. The court contrasted the generalized risks of the wilderness and the public policy considerations that go into keeping an area pristine, with those cases in which the court had found that a failure to warn

did not involve a public policy consideration:

> In each of these cases the court could not perceive in the record before it any significant social, economic or political policy in the action or inaction that allegedly contributed to the injury giving rise to the lawsuit. In these cases, a specific hazard existed, distinct from the multitude of hazards that might exist in, for example, a wilderness trail through a national park or forest, where warnings might detract from the area's character or safety structures might be costly.

*Duke*, 131 F.3d at 1411.

The steep cut left in the hillside in this case presented a hazard similar to the situation in *Duke*. The IHS knew that several families lived near the steep cut in the hillside and it was foreseeable for children to play on the hazard, yet the officials decided to leave the steep cut in the hillside. Decisions that require choice are exempt from suit under the FTCA only if they are "susceptible to policy judgment and involve an exercise of political, social, [or] economic judgment." *Gaubert*, 499 U.S. at 325. The record presents no significant social, economic, or political policy considerations in the IHS's actions in the engineering or approval of the project which left the steep cut in the hillside. The actions and inactions of the IHS Service officials in this regard do not fall under the discretionary function exception to the FTCA. *See Duke*, 131 F.3d at 1411-12. Accordingly, the discretionary function exception is inapplicable.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the Alternative, Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(b), (Doc. 52), filed on October 31, 2011, is granted as to Count II, but otherwise **DENIED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**